IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| v. | : | CRIMINAL NO. 19-17 |
| ELIAS ADAMES | : | |

## GOVERNMENT'S SENTENCING MEMORANDUM

The United States of America, by its attorneys, Jacqueline C. Romero, United States Attorney for the Eastern District of Pennsylvania, and Erica Kivitz, Assistant United States Attorney for the District, hereby files its sentencing memorandum in connection with the above-captioned case.

**I.       BACKGROUND**

   **A.       The Charges**

The defendant was charged by indictment with one count of possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B). The charge arose from the defendant's involvement in the possession with intent to distribute approximately 550.7 grams of a mixture and substance containing a detectable amount of heroin, 3.953 kilograms of a mixture and substance containing a detectable amount of morphine, and 2.506 kilograms of tramadol on December 13, 2018, in Philadelphia.

On May 18, 2022, the defendant pleaded guilty to the sole charge in the indictment. A sentencing hearing is scheduled for September 8, 2022.

   **B.       Summary of the Offense Conduct**

On December 13, 2018, agents from the Drug Enforcement Administration ("DEA")

learned from a confidential source ("CS") that an individual referred to as "Figora," who investigators identified as defendant Elias Adames, was planning to receive and transport narcotics on that date.

That evening, the CS provided the DEA with the address of 6438 Rising Sun Avenue, Philadelphia, PA, as the location where Adames would be located in possession of the drugs. The CS further advised that Adames would be driving in a white Jeep. Based on training, experience and knowledge of the investigation, DEA agents believed the address to be a possible meet location for Adames and his source of supply. Investigators established surveillance in the area of 6438 Rising Sun Avenue, Philadelphia, PA.

At approximately 5:48 p.m., investigators observed a white Jeep, which matched the provided description, parked on the street in the vicinity of 6438 Rising Sun Avenue. Two men were seated in the Jeep, and it appeared to be running. Adames was seated in the Jeep's front passenger seat.

At approximately 5:54 p.m., Adames exited the front passenger seat of the vehicle and walked southbound on Rising Sun Avenue. Adames stopped near the intersection of Rising Sun Avenue & Robbins Street with a cellphone at his ear.

At approximately 6:04 p.m., the driver and sole occupant of the white Jeep made an eastbound turn onto the 500 block Levick Street and stop. Adames was observed walking from the direction of Palmetto Street with a weighted blue book bag on his left shoulder then reaching for the front passenger door handle of the vehicle. Adames entered the vehicle's front passenger seat with the weighted blue book bag. Immediately after Adames entered the vehicle, it drove eastbound and stopped shortly thereafter. The CS was able to confirm that the blue weighted bag that Adames was observed carrying contained narcotics.

At approximately 6:20 p.m., law enforcement conducted a traffic stop of the vehicle at

the intersection of Levick Street & Trotter Street. Upon approach, investigators requested identification for both occupants and separated them. When asked where he was going, Adames informed investigators that the driver (his friend) picked him up and was driving Adames to pick up his children. The driver consented to a search of the vehicle, which revealed the blue book bag that Adames had been observed carrying.   Inside of the bookbag were multiple brick shaped objects consistent with bulk narcotics. Adames was arrested on scene, and testing of the suspected narcotics conducted by the DEA laboratory later confirmed the presence of heroin in amount of 550.7 grams. Moreover, ADAMES was in possession of what investigators believed to be additional kilograms of cocaine, but later laboratory testing revealed that it was actually 3,953 grams of morphine and 2 packages containing 2,305.6 grams of tramadol.

## II.     SENTENCING GUIDELINES CALCULATION

### A.     Statutory Maximum Sentence

The statutory maximum sentence for possession with intent to distribute 100 grams or more of heroin, in violation of 21 U.S.C. § 841(a)(1), (b)(1)(B) is 40 years' imprisonment, a mandatory minimum 5-year term of imprisonment, a $5,000,000 fine, a minimum of 4 years of supervised release up to a lifetime of supervised release, and a $100 special assessment. This is also the total statutory maximum sentence.

### B.     Sentencing Guidelines Calculation

Pursuant to USSG § 2D1.1, the base offense level for the offense is 30. PSR ¶ 20. The defendant is entitled to a two-level reduction under the "safety valve" provisions of USSG § 5C1.2. PSR ¶ 21. He is also entitled to a three-level reduction for acceptance of responsibility, under USSG §§ 3E1.1 (a) and (b). PSR ¶¶ 27, 28. The defendant has a criminal history category of I. PSR ¶ 33. The total offense level as calculated by Probation is 25. PSR ¶ 29. Accordingly, the defendant's advisory guideline range is 57-71 months' imprisonment. PSR ¶ 69.

### C. Consideration of the 3553(a) Factors

The Supreme Court has declared, "As a matter of administration and to secure nationwide consistency, the Guidelines should be the starting point and the initial benchmark." *Gall v. United States*, 552 U.S. 38, 49 (2007). Thus, the Sentencing Guidelines remain an indispensable resource for assuring appropriate and uniform punishment for federal criminal offenses.

The Court must also consider all of the sentencing factors set forth in 18 U.S.C. § 3553(a) in determining the appropriate sentence in this case. The Section 3553(a) factors include: (1) the nature and circumstances of the offense and the history and characteristics of the defendant; (2) the need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense; (3) the need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant; (4) the need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner; (5) the guidelines and policy statements issued by the Sentencing Commission; (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need to provide restitution to any victims of the offense. 18 U.S.C. § 3553(a).[1] Restitution is not an issue in this case.

### 1. The nature and circumstances of the offense and the history and characteristics of the defendant.

---

[1] Further, the "parsimony provision" of Section 3553(a) states that "[t]he court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection." The Third Circuit has held that "district judges are not required by the parsimony provision to routinely state that the sentence imposed is the minimum sentence necessary to achieve the purposes set forth in § 3553(a)(2). . . . '[W]e do not think that the "not greater than necessary" language requires as a general matter that a judge, having explained why a sentence has been chosen, also explain why some lighter sentence is inadequate.'" *United States v. Dragon*, 471 F.3d 501, 506 (3d Cir. 2006) (quoting *United States v. Navedo-Concepcion*, 450 F.3d 54, 58 (1st Cir. 2006)).

The defendant's conduct in this case was serious. The defendant possessed over 500 grams of heroin, among the deadliest of narcotics, and intended to distribute every one of them. The variety of drugs with which he was caught—to include morphine and tramadol—is indicative of his willingness to distribute any type of poison for his own financial gain. Drug trafficking is a harmful and dangerous business, and the defendant's actions unquestionably helped fuel the drug epidemic that plagues this community and the nation at large. While the defendant has no criminal convictions, his arrest history would suggest that he has been involved in the drug business for some time.

For all the years that the defendant illegally resided in this district, his only contribution was the distribution of narcotics in this district. According to the presentence report, the defendant did lawful work for only one of his 14 years here before his arrest. True, the defendant's upbringing was not without its challenges; he and his siblings witnessed his father's alcohol addiction and the domestic abuse of their mother, and they struggled financially. Nonetheless, the defendant knows right from wrong, having worked legitimately in the past and having a loving and stable role model in his mother. The Court's ultimate sentence should reflect this history and these characteristics, as well as the seriousness of the offense.

  **2.  The need for the sentence imposed to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense.**

As stated above, the defendant engaged in egregious conduct involving his possession and intention to distribute multiple highly addictive and destructive drugs, including heroin. Undoubtedly, had the narcotics not been seized by law enforcement, the defendant would have caused hundreds, if not more, servings of deadly narcotics to be distributed on a consumer level. As evidenced on the streets in this community, the effects of such prolific distribution are devastating.

The sentence imposed in this case must account for the damage caused by the defendant's actions, and provide just punishment for his role in the offense. The defendant's crime was incredibly serious and harmful, and although he has accepted responsibility for his actions, the seriousness of his actions still warrants significant punishment.

3. **The need to afford adequate deterrence to criminal conduct, and to protect the public from further crimes of the defendant.**

The sentence the Court imposes should provide both specific and general deterrence to criminal conduct. The defendant's actions in this case warrant an appropriate sentence to prevent him, and others, from committing further crimes; namely, from fueling the drug trade that plagues this community and contributing to the devastating effects associated with such conduct. While the defendant will be deported at the conclusion of his sentence, his home country is indeed a source country for narcotics imported into this district, and the government believes that this defendant must be deterred from involving himself in the drug trade even if physically located elsewhere.

4. **The need to provide the defendant with educational or vocational training, medical care, or other correctional treatment in the most effective manner.**

There is no demonstrated need to adjust the sentence in order to provide the defendant with needed educational or vocational training, medical care or additional treatment. His illegal status in the United States will prevent him from taking advantage of many programs offered by the Bureau of Prisons, but to the extent that he may be eligible to continue to receive mental health treatment, it appears that he would benefit from such counseling.

5. **The guidelines and policy statements issued by the Sentencing Commission and the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct.**

The defendant has been convicted of committing a serious crime and he should be

sentenced accordingly. The government is not aware of any policy considerations relevant to the Court's imposition of sentence in this case.

### 6. Restitution.

Restitution is not an issue in this case.

## IV. CONCLUSION

For all of these reasons, the government respectfully recommends that the defendant receive a sentence of imprisonment consistent with the 3553(a) factors addressed above.

Respectfully submitted,

JACQUELINE C. ROMERO
United States Attorney


 /s/  Erica Kivitz
ERICA KIVITZ
Assistant United States Attorney

CERTIFICATE OF SERVICE

I certify that a true and correct copy of the Government's Sentencing Memorandum has been served by electronic mail upon:

Coley Reynolds, Esq.
cor@reynoldsfirm.com

*/s/ Erica Kivitz*
ERICA KIVITZ
Assistant United States Attorney

Date:   September 1, 2022